## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JASON NESSIM, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | **COMPLAINT FOR** |
| | ) | **VIOLATION OF THE** |
| vs. | ) | **FEDERAL SECURITIES LAWS** |
| | ) | |
| CLEVELAND-CLIFFS INC., LOURENCO GONCALVES, DOUGLAS TAYLOR, JOHN T. BALDWIN, ROBERT P. FISHER, JR., SUSAN GREEN, M. ANN HARLAN, JANET MILLER, JOSEPH RUTKOWSKI, ERIC M. RYCHEL, GABRIEL STOLIAR, AND MICHAEL D. SIEGAL, | ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

Plaintiff Jason Nessim ("Plaintiff"), by his undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

## NATURE AND SUMMARY OF THE ACTION

1. Plaintiff, a stockholder of Cleveland-Cliffs Inc. ("Cliffs" or the "Company") brings this action against the Company and its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), arising out of material omissions and misstatements made in connection with the definitive merger agreement (the "Merger Agreement") between and among Cliffs and AK Steel Holding Corporation ("AK Steel").

2. On December 3, 2019, the Company and AK Steel issued a joint press release announcing that the Board had caused the Company to enter into the Merger Agreement. Pursuant to the Merger Agreement, AK Steel's shareholders will receive 0.4 shares of Cliffs for each AK Steel share they own, and AK shareholders will end up with 32 percent of the shares of the company compared to the 68 percent that will be held by Cliffs shareholders (the "Merger Consideration").

3. On January 8, 2020, Defendants authorized the filing of a Form S-4 Registration Statement (the "Registration Statement") with the SEC designed to convince Cliffs stockholders to approve the Proposed Transaction. The Registration Statement is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding (i) the Company's financial projections; and (ii) the conflicts of interest concerning the Company's financial advisors, Moelis & Company LLC ("Moelis") and Credit Suisse Group AG ("Credit Suisse") to support its fairness opinion.

4. The special meeting of Cliffs stockholders to vote on the Proposed Transaction is forthcoming (the "Stockholder Vote"). Therefore, it is imperative that the material information omitted from the Registration Statement be disclosed to the Company's stockholders prior to the Stockholder Vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from consummating the Proposed Transaction unless and until the material information discussed below is disclosed to Cliff's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**PARTIES**

6. Plaintiff is, and has been at all relevant times, a stockholder of Cliffs.

7. Cliffs is the largest and oldest independent iron ore mining company in the United States. Cliffs is a major supplier of iron ore pellets to the North American steel industry from its mines and pellet plants located in Michigan and Minnesota. By 2020, Cliffs expects to be the sole producer of hot briquetted iron, or HBI, in the Great Lakes region with the development of its first production plant in Toledo, Ohio. Driven by the core values of safety, social, environmental and capital stewardship, Cliffs employees endeavor to provide all stakeholders with operating and financial transparency. It maintains its principal executive offices at 200 Public Square, Cleveland, OH 44114. The Company's common stock is listed on the New York Stock Exchange under the ticker symbol "CLF." Cliffs is named as a defendant herein solely for the purpose of providing full and complete relief.

8. Defendant Lourenco Goncalves was appointed Chairman, President and Chief Executive Officer of Cleveland-Cliffs Inc. in August 2014.

9. Defendant Douglas Taylor has served as a director of the company since 2014.

10. Defendant John T. Baldwin has served as a director of the Company since 2014.

11. Defendant Robert P. Fisher, Jr. has served as a director of the Company since 2014.

12. Defendant Susan Green has served as a director of the Company since 2014.

13. Defendant M. Ann Harlan has served as a director of the Company since 2019.

14. Defendant Janet Miller has served as a director of the Company since 2019.

15. Defendant Joseph Rutkowski has served as a director of the Company since 2014.

16. Defendant Eric M. Rychel has served as a direct of of the Company since 2016.

17. Defendant Gabriel Stoliar has served as a director of the Company since 2014.

18. Defendant Michael D. Siegal has served as a director of the Company since 2014.

19. The defendants described in ¶¶ 8-18 are referred to herein as the "Individual Defendants."

20. Collectively, Cliffs and the Individual Defendants are referred herein as "Defendants."

## JURISDICTION AND VENUE

21. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, pursuant to 15 U.S.C. § 78aa (federal question jurisdiction), as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9 promulgated thereunder

22. Personal jurisdiction exists over each Defendant because each has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play, substantial justice, and under Section 27 of the Exchange Act.

23. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District, as the Company's common stock is listed and traded on the New York Stock Exchange (the "NYSE") within this District; and (ii) Defendants have received substantial compensation in this District by accessing the capital markets active in this District.

## FURTHER SUBSTANTIVE ALLEGATIONS

24. On August 20, 2019, Goncalves contacted Roger K. Newport, Chief Executive Officer of AK Steel, and indicated that Cliffs was interested in acquiring AK Steel's Ashland Works blast furnace. Over the next few weeks, Mr. Goncalves and Mr. Newport engaged in a few additional preliminary discussions regarding the potential sale of the Ashland Works blast furnace.

25. In October 2019, preliminary discussions concerning the proposed Ashland Works blast furnace transaction grew into a more transformative transaction involving the two companies. During early October 2019, Cliffs informed its legal counsel, Jones Day, that Cliffs was considering the potential acquisition of AK Steel in its entirety. Cliffs also informed Moelis of, and commenced working with Moelis in connection with, the potential transaction. Cliffs subsequently entered into an engagement letter with Moelis dated November 27, 2019.

26. On October 21, 2019, the Cliffs board held its regularly scheduled meeting, which was attended by members of Cliffs management and representatives of Jones Day. The Cliffs board discussed with members of Cliffs management a potential transaction with AK Steel, including the potential synergies of combining Cliffs and AK Steel and the potential upsides and potential challenges of a transaction with AK Steel. The members of the Cliffs board then unanimously approved moving forward with submitting to AK Steel a non-binding proposal for the acquisition of AK Steel.

27. That same day, Cliffs delivered to Mr. Newport a written proposal (the "October 21 proposal") that contemplated an acquisition of AK Steel in a stock-for-stock transaction with a fixed exchange ratio of 0.359 Cliffs common shares for each share of AK Steel common stock, which represented a premium of 10% to the thirty-day volume weighted average trading price for AK Steel common stock as of October 18, 2019, and would result in AK Steel stockholders, in their capacity as such, owning approximately 30% of the combined company immediately following the completion of the proposed transaction.

28. In late October, Cliffs engaged Credit Suisse to, alongside Moelis, provide financial advisory services to Cliffs in connection with the potential transaction. Prior to being engaged by Cliffs, AK Steel provided Credit Suisse its consent for Credit Suisse (including members of the

deal team that had previously provided formal and informal advice to AK Steel) to be engaged by Cliffs in connection with the Merger, and Credit Suisse agreed not to disclose to Cliffs any confidential information that Credit Suisse had received in connection with its prior work with AK Steel. This approval was necessary as Credit Suisse (including members of its proposed team to advise Cliffs in connection with the potential transaction) had assisted AK Steel on a number of confidential matters over the past several years, including a potential transaction between AK Steel and Cliffs. Cliffs subsequently entered into an engagement letter with Credit Suisse effective as of October 27, 2019.

29. On November 8, 2019, Cliffs provided AK Steel with Cliffs' unaudited forecasted financial information and AK Steel provided Cliffs certain preliminary forecasted information regarding AK Steel.

30. On November 13, 2019, members of management of Cliffs and AK Steel, together with representatives of Moelis, Credit Suisse, Jones Day, Goldman Sachs and Weil, met at Jones Day's office in Columbus, Ohio. At the meeting, Cliffs and AK Steel each provided the other with a management presentation regarding its business. During their respective management presentations, AK Steel and Cliffs also reviewed with each other their respective preliminary five-year financial projections, which had been previously made available. The parties, with the assistance of their respective financial advisors, also subsequently engaged in a series of discussions regarding certain differences in the underlying assumptions used in preparing their respective financial projections.

31. On November 25, 2019, Mr. Goncalves sent Mr. Newport a revised written proposal for the acquisition of AK Steel by Cliffs (the "November 25 proposal") which contemplated a fixed exchange ratio of 0.370 Cliffs common shares for each share of AK Steel

common stock in an all-stock transaction, representing a 15% premium to AK Steel's then-last closing price. The November 25 proposal, which would have resulted in AK Steel stockholders owning approximately 30% of the combined company, stated that it was Cliffs' final proposal for a potential transaction.

32.     During the evening of November 26, Newport and Goncalves held a teleconference call to discuss the November 25 proposal. During the call, Newport informed Goncalves that the proposed exchange ratio was inadequate, but that the AK Steel board would be willing to consider a potential transaction with an exchange ratio of 0.400, which would result in AK Steel stockholders having approximately a 32% pro forma ownership interest in the combined company.

33.     On November 27, 2019, the Cliffs board held a telephonic meeting, with members of Cliffs management and representatives of Jones Day in attendance. After discussion, the Cliffs board agreed to continue the negotiation process based on the AK Steel counteroffer of a fixed exchange ratio of 0.400.

34.     During the period from November 29, 2019 through the execution of the Merger Agreement on December 2, 2019, representatives of Cliffs and AK Steel continued to work to finalize the definitive documentation for the transaction, including debt commitment letters to be entered into by Cliffs.

35.     Finally, after the market closed on December 2, 2019, a special telephonic meeting of the Cliffs board was held for the purpose of considering the approval of the Merger Agreement. Representatives of Jones Day, Moelis and Credit Suisse as well as members of Cliffs management also participated. Mr. Goncalves reported that the AK Steel board had unanimously approved the Merger Agreement at the AK Steel board's meeting earlier that day. Representatives of Jones Day then discussed, among other things, (i) the Cliffs board's fiduciary duties under Ohio law, (ii) the

principal terms of the Merger Agreement, (iii) the regulatory approvals that would be required in the U.S., Mexico and Canada, (iv) the change of control payments that would be due upon closing of the transaction and (v) the voting requirements for the companies' respective shareholders to approve the transaction. A representative of Moelis reviewed with the Cliffs board Moelis' financial analysis with respect to the exchange ratio and delivered an oral opinion that the exchange ratio pursuant to the Merger Agreement was fair, from a financial point of view, to Cliffs. Following further discussions, the Cliffs board unanimously approved the Merger Agreement, the Merger and the issuance of Cliffs shares in the Merger, upon the terms and subject to the conditions set forth in the Merger Agreement, and resolved to recommend that Cliffs shareholders vote in favor of the Merger Agreement and the transactions contemplated by the Merger Agreement, including the issuance of Cliffs shares pursuant to the Merger Agreement.

36.     Later that evening, Cliffs and AK Steel finalized and entered into the Merger Agreement. On December 3, 2019, prior to the opening of trading on the NYSE, Cliffs and AK Steel issued a joint press release announcing the transaction and their entry into the Merger Agreement.

37.     On December 3, 2019, the Company issued a press release announcing the Proposed Transaction (the "Press Release"). The Press Release read in relevant part:

> **CLEVELAND & WEST CHESTER, OH - DECEMBER 3, 2019** - Cleveland-Cliffs Inc. (NYSE: CLF) and AK Steel Holding Corporation (NYSE: AKS) are pleased to announce that they have entered into a definitive merger agreement pursuant to which Cliffs will acquire all of the issued and outstanding shares of AK Steel common stock. Lourenco Goncalves, Chairman of the Board, President and CEO of Cliffs, will lead the expanded organization.
>
> Under the terms of the merger agreement, AK Steel shareholders will receive 0.40 shares of Cliffs common stock for each outstanding share of AK Steel common stock they own. Upon completion of the transaction, Cliffs shareholders will own approximately 68% and AK Steel shareholders will own approximately 32% of the combined company, respectively, on a fully diluted basis.

The fixed exchange ratio implies a consideration of $3.36 per share of AK Steel common stock and represents a premium of 16% based on the closing share prices of Cliffs and AK Steel common shares, respectively, as of December 2, 2019, and a premium of 27% based on the 30 day volume weighted average price of AK Steel common shares. The transaction implies an aggregate consideration to AK Steel shareholders of approximately $1.1 billion on a fully diluted basis, a total enterprise value of approximately $3.0 billion for AK Steel and an acquisition multiple of 5.6x LTM Adjusted EBITDA.

The transaction will combine Cliffs, North America's largest producer of iron ore pellets, with AK Steel, a leading producer of innovative flat-rolled carbon, stainless and electrical steel products, to create a vertically integrated producer of value-added iron ore and steel products. The combined company will be ideally positioned to provide high-value iron ore and steel solutions to customers primarily across North America.

Mr. Goncalves stated: "We are excited to be able to deliver real value to the shareholders of both Cliffs and AK Steel through a value enhancing and leverage-neutral transaction. By combining the best-in-class quality of AK Steel's assets and its enviable product mix with Cliffs' debt profile and proven management team, we are creating a premier North American company, self-sufficient in iron ore pellets and geared toward high value-added steel products."

He continued, "The pro forma Cliffs will be a vertically integrated steel company that is expected to drive improved profitability for existing Cliffs and AK Steel shareholders and is well-positioned to serve both the blast furnace and electric arc furnace segments. In addition, Cliffs' existing strong balance sheet and self-sufficiency in pellets for the combined company provide flexibility to pursue additional growth opportunities, including the potential future utilization of the blast furnace in Ashland to produce merchant pig iron, an opportunity neither company could pursue on a standalone basis."

Mr. Goncalves concluded, "For Cliffs, we expect to realize immediate growth and a long-desired objective of a more diverse customer base, as well as more predictable cash flow generation due to the contracted nature of AK Steel's sales of high-end automotive steel. Our track record of providing high-grade iron ore combined with AK Steel's recognized ability to produce the highest quality steel grades, creates a highly complementary and compelling business model. We look forward to welcoming the AK Steel team into our organization and creating a unique company focused on executing value-enhancing opportunities for all of our stakeholders."

Roger K. Newport, CEO of AK Steel, added, "We believe this transaction is a compelling opportunity for AK Steel shareholders to participate in the substantial upside potential of what will be a premier vertically integrated producer of value-added iron ore and steel products with significant scale and

diversification. Our shareholders will benefit from exposure to a larger, more diversified company that is better positioned to capitalize on growth opportunities. The combination of Cliffs' iron ore pellet capabilities and our innovative, high-quality steel product development and production is strategically compelling. Together, we expect to be able to take advantage of growth opportunities faster and more fully than either company could on its own. With AK Steel's 120-year heritage, which began in Ohio, and expertise in steelmaking, AK Steel and Cliffs make an excellent combination, which we expect will facilitate a smooth integration process."

**Key Strategic & Financial Benefits**

- **Brings together complementary businesses to create company with full suite of value-added products:** The combination will create significant opportunities to generate additional value from market trends across the entire steel value chain and enable more consistent, predictable performance through market cycles. The integrated supply chain provides AK Steel self-sufficiency in iron ore supply. Together, Cliffs and AK Steel will have a presence across the entire manufacturing process, from mining to pelletizing to the development and production of finished high value steel products, including Next Generation Advanced High Strength Steels for automotive and other markets.

- **Solidifies demand for Cliffs' pellet offtake, with potential for growth into merchant pig iron:** The combined company will ensure pellet volume commitments to AK Steel's blast furnaces along with Cliffs' Toledo hot briquetted iron facility, to complement its existing long-term minimum volume pellet offtake agreements with other key integrated steel producers. Further, the potential startup of pig iron manufacturing at AK Steel's facility in Ashland, Kentucky would create future opportunities for pellet demand and more metallics products without significant additional capital expenditures.

- **Accretion through significant annual synergies:** The transaction offers significant potential for operational synergies, which will contribute to long-term value creation for investors. The combination is expected to generate approximately $120 million of annual cost synergies to be

> fully realized within the first 12 months after closing, primarily from consolidating corporate functions, reducing duplicative overhead costs, and procurement and energy cost savings, as well as operational and supply chain efficiencies.
>
> - **Stronger company with compelling pro forma financial metrics:** The combined company is expected to benefit from a larger and more diversified base of customers, with less overall emphasis on commodity-linked contracts. For the last twelve months, the pro forma combined company has generated net revenue of $8.2 billion[1], Adjusted EBITDA of $1.3 billion[2] and unlevered free cash flow of $923 million[2,3]. The transaction will also be leverage-neutral with pro forma Total Debt to Adjusted EBITDA of 3.5x.
>
> **Additional Transaction Details & Governance**
>
> Following completion of the transaction, with Mr. Goncalves leading the expanded organization, Mr. Newport will retire as CEO and a Director of AK Steel. Three existing members of AK Steel's Board of Directors will join the Cliffs Board, and two existing Cliffs Board members will step down, bringing the Cliffs Board to 12 members in total. AK Steel will become a direct, wholly-owned subsidiary of Cliffs and will retain its branding and corporate identity. Cliffs will continue to be listed on the NYSE with its headquarters in Cleveland, while maintaining a significant presence at AK Steel's current offices in West Chester, Ohio along with its Research and Innovation Center in Middletown, Ohio.
>
> The transaction is expected to close in the first half of 2020, subject to approval by the shareholders of both companies, receipt of regulatory approvals and satisfaction of other customary closing conditions.
>
> Cliffs has obtained an approximately $2 billion financing commitment from Credit Suisse in connection with a new Asset Backed Loan and the refinancing of AK Steel's 2023 senior secured notes.

**The Registration Statement Misleads Cliffs Stockholders by Omitting Material Information**

38.     On January 8, 2020, the Company filed the materially misleading and incomplete Registration Statement with the SEC. Designed to convince stockholders to vote in favor of the

Proposed Transaction, the Registration Statement is rendered misleading by the omission of critical information concerning the Company's expected future value as a public entity as evidenced by the Company's financial projections, the financial analyses conducted by Moelis and the process undertaken by the Board leading up to the signing of the Merger Agreement.

### *Material Omissions Concerning the Company's Financial Projections*

39. The Registration Statement omits material information that is necessary for the Company's shareholders to evaluate both the Company's future as a standalone entity and the valuation analyses performed by Credit Suisse and Moelis.

40. Cliffs engaged both Credit Suisse and Moelis to render financial advisory and investment banking services to Cliffs, including an opinion to the Board as to the fairness, from a financial point of view, to the holders of Cliffs common stock of the exchange ratio in the Proposed Transaction. Cliffs provided its financial advisors with forecasts for the Company as stated in the Registration Statement. Registration Statement at 111. However, with respect to the financial projections, the Registration Statement fails to provide enough information regarding financial projections for AK Steel and Cliffs.

41. Specifically, with respect to *Cliffs Unaudited Forecasted Financial Information*, the Registration Statement fails to disclose, for each set of projections: (i) all line items used to calculate (a) Adjusted EBITDA, (b) Adjusted EBITDAP, and (c) Unlevered Free Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

42. Similarly, with respect to *Cliffs-Adjusted AK Steel Unaudited Forecasted Financial Information*, the Registration Statement fails to disclose, for each set of projections: (i) all line items used to calculate (a) Adjusted EBITDA, (b) Adjusted EBITDAP, and (c) Unlevered Free Cash Flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

43. Providing these non-GAAP metrics without disclosing the line item metrics used to calculate them, or otherwise reconciling the non-GAAP projections to GAAP measures, makes the provided disclosures materially incomplete and misleading.

*Financial Advisors' Conflicts of Interest*

44. With regard to the potential conflicts of interest faced by Credit Suisse, the Registration Statement fails to adequately disclose the prior relationship that Credit Suisse had with AK Steel and the nature of its engagement with Cliffs. In late October, Cliffs engaged Credit Suisse to, alongside Moelis, provide financial advisory services to Cliffs in connection with the potential transaction. However, immediately prior to being engaged by Cliffs, AK Steel provided Credit Suisse its consent for Credit Suisse, including those members of the deal team that had specifically provided formal and informal advice to AK Steel, to be engaged by Cliffs in connection with the Merger, due to the fact that Credit Suisse had received confidential information in connection with its prior work with AK Steel. This approval was necessary as Credit Suisse, including those members of the deal team that had specifically provided formal and informal advice to AK Steel, had assisted AK Steel on a number of confidential matters over the past several years, including a potential transaction between AK Steel and Cliffs.

45. As noted in the Registration Statement:

> Prior to being engaged by Cliffs, AK Steel provided Credit Suisse its consent for Credit Suisse (including members of the deal team that had previously provided formal and informal advice to AK Steel) to be engaged by Cliffs in connection with the Merger, and Credit Suisse agreed not to disclose to Cliffs any confidential information that Credit Suisse had received in connection with its prior work with AK Steel. Prior to Cliffs commencing work with Credit Suisse, Credit Suisse disclosed to Cliffs that Credit Suisse (including members of its proposed team to advise Cliffs in connection with the potential transaction) had assisted AK Steel on a number of confidential matters over the past several years. Credit Suisse also informed Cliffs that in October 2019 (prior to Credit Suisse being engaged by Cliffs) members of AK Steel management had discussed a potential transaction between AK Steel and Cliffs with certain representatives of Credit Suisse on an

13

    informal, non-engagement basis, and that Credit Suisse had provided certain high-level materials to AK Steel management that were based on publicly available information.

Registration Statement at 73.

  46. However, the Registration Statement fails to disclose what Credit Suisse was paid for this past work on behalf of AK Steel, nor does it disclose when this relationship first began. Accordingly, Cliffs stockholders are actively misled regarding any potential conflicts of interest on the part of Credit Suisse.

  47. This mystery only deepens with the complete lack of information concerning Credit Suisse's work on behalf of Cliffs. Despite the fact that Cliffs engaged Credit Suisse to, alongside Moelis, provide financial advisory services to Cliffs in connection with the potential transaction, it does not appear that Credit Suisse provided any financial analysis with respect to the exchange ratio and/or delivered an opinion that the exchange ratio pursuant to the Merger Agreement was fair, from a financial point of view, to Cliffs stockholders. Failure to disclose what work Credit Suisse did misleads the stockholders regarding Credit Suisse's involvement in the process.

  48. The Registration Statement fails to disclose the fee that Credit Suisse is expected to receive from Cliffs in connection with its engagement. Disclosure of any compensation received, or to be received, as a result of the relationship between a financial advisor and the subject company or its affiliates is material to Cliffs shareholders. Without this information, it is impossible for shareholders to be able to understand what factors might influence the financial advisor's analytical efforts and opinions. A financial advisor's own proprietary financial interest in a transaction must be carefully considered when assessing how much credence to give its analyses and opinions. A reasonable shareholder would want to know what important economic motivations that the advisor, employed by a board to assess the fairness of the merger to the

shareholders, might have. This is especially true when that motivation could rationally lead the advisor to favor a deal at a less than optimal price, because the procession of a deal was more important to them—given their overall economic interest—than only approving a deal at truly fair price to shareholders.

49. Accordingly, Cliffs stockholders must be provided enough information so that they themselves can evaluate Credit Suisse's past relationship with AK Steel and its engagement on behalf of Cliffs in order to have a materially complete sense of the conflicts of interests operating in the background. Clearly, Credit Suisse has maintained a relationship with AK Steel in the past two years. However, the extent of Credit Suisse's past relationship with AK Steel, and the fees received is not disclosed in the Registration Statement. The failure to do so here, is all the more worrisome when compared to the lack of disclosures issued by Credit Suisse concerning its efforts on behalf of Cliffs. The Registration Statement omits to disclose any details concerning any financial analyses conducted by Credit Suisse or the fees it stands to receive for its present engagement. As the Registration Statement omits to disclose details regarding Credit Suisse's past relationship with AK Steel, or to disclose the full nature of Credit Suisse's relationship with Cliffs and the work it conducted, a full disclosure is necessary for Cliffs stockholders to properly evaluate the potential conflicts of interest faced by the financial advisor and understand what factors might influence the financial advisor's analytical efforts.

50. Based on the foregoing, Cliffs public shareholders are being materially misled and lack critical information necessary to evaluate the Proposed Transaction. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

**Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Cliffs**

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Cliffs is liable as the issuer of these statements.

65. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

66. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

67. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

68. The Registration Statement is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

69. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

70. Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the Exchange Act
### Against the Individual Defendants

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants acted as controlling persons of Cliffs within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cliffs and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

73. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous

recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

75. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

76. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: January 31, 2020        Respectfully submitted,

| | |
|---|---|
| **LEVI & KORSINSKY, LLP** | By: /s/ *Adam M. Apton* |
| Donald J. Enright (to be admitted *pro hac vice*) | Adam M. Apton (AS8383) |
| Elizabeth K. Tripodi (to be admitted *pro hac vice*) | **LEVI & KORSINSKY, LLP** |
| 1101 30th Street, N.W., Suite 115 | 1101 30th Street NW, Suite 115 |
| Washington, DC 20007 | Washington, DC 20007 |
| Tel: (202) 524-4290 | Tel: (202) 524-4859 |
| Fax: (202) 333-2121 | Fax: (212) 333-2121 |
| Email: denright@zlk.com | Email: aapton@zlk.com |
|    etripodi@zlk.com | |
| *Attorneys for Plaintiff* | *Attorneys for Plaintiff* |